The first case is McCutcheon v. Colgate-Palmolive. May it please the Court, I'm Evan Chesler. I'm representing the appellants. The issue here is whether the District Court erred by granting plaintiff's summary judgment motion below. As the Court, I know, understands, the standard of review is de novo. In 2005, Colgate adopted a residual annuity amendment, or RAA, to its retirement plan. The RAA was adopted to make sure that participants who were entitled to a greater benefit under a prior old annuity plan and who chose to receive their benefit in the form of a lump sum under Colgate's new plan received the full value of their old annuity. But the District Court held that the provision meant something quite different from that. The District Court said it was clear and unambiguous and that it required the plan to pay an additional benefit to members who chose a new plan lump sum that was less than either of two things, either less than the annuity benefit under the old plan or less than the annuity form of the lump sum benefit under the new plan. We believe it was error for the District Court to determine that the provision was clear and unambiguous and to interpret it as the Court did. The RAA, in fact, has nothing to do with comparing the value of the lump sum under the new plan to the value of the annuity for the same benefit under the new plan. And at an absolute minimum, the terms of the RAA we submit are ambiguous and should not have been the subject of summary judgment. I would urge the Court just to look at the words of the RAA. They appear in the appellate appendix at 366. They also appear at pages 14 and 15 of our opening brief. And I'm going to admittedly skip a few words for clarity purposes, but the full text is in the record. And I just want to read those two paragraphs to the Court. The first paragraph says, As effective as of July 1, 1989, a member who is entitled to a greater benefit than his accrued benefit and who chooses to receive his benefit under this lump sum payment option shall receive, in addition to such lump sum payment, an additional benefit. It goes on to say, That such additional benefit shall be computed by subtracting the age 65 single-life annuity actuarial equivalent amount of the member's lump sum payment from the age 65 single-life annuity benefit otherwise payable to the member under Appendices B, C, or D as applicable. So at the start, you're saying that this provision applies only to those who were entitled to grandfather benefits and were entitled to a greater benefit pursuant to the old plan than they would receive under the new plan. Is that correct? Precisely, Your Honor. And you're reading that as a textual clue that this is not about a comparison between the PRA in annuity form versus the PRA in lump sum. Exactly, Your Honor. And I'm saying that the reason for citing July 1, 1989 is that's when the plans transition from old to new. There's no dispute that accrued benefit, that term refers to the new plan. And the reason that the provision provides that there be an annuity actuarial equivalent to the lump sum is that you need to compare apples to apples. You're comparing the old benefit, which was only in the form of an annuity, to the new lump sum, and you must convert that lump sum into an annuity, compare them. And if it turns out that the old benefit is worth more than the new benefit, you get a payment. And all that the RAA says is the first paragraph tells you who's entitled to such a payment. The second paragraph tells you how to compute it. Once you determine that at a minimum there is ambiguity as to who is eligible under the first paragraph and we submit we have the better reading of that paragraph, that it's old versus new, the second paragraph simply tells you how to do the math. It literally begins with the word such additional benefit, referring to the above benefit that's just been described. That such additional benefit is the amount, in your view, they should have received under the 1989 plan but didn't, right? Exactly. Precisely, Your Honor. Precisely. So the key question in our view, there are lots of questions on this appeal, but in the interest of time I'm going to focus really on one. What does the term single life annuity benefit otherwise payable mean in paragraph 2 of the RAA? As I said, we believe it refers to the old plan annuity benefit. We believe that that's pretty clear from the language of the RAA itself, but at a minimum the RAA language is sufficiently ambiguous that it could not have been properly resolved on a summary judgment meeting. Even if our reading is the lesser of the two and we submit it is the greater of the two, under the Kirkendall case from this circuit in 2019, the court still would have committed error by granting summary judgment even if our interpretation was the lesser. It is also the case that the two provisions, the lump sum and the annuity, are defined using exactly the same words of the plan or refer the court to A. 585 and A. 586 of the record where the two provisions are defined using exactly the same words. So that leaves us with what is the plaintiff's answer to all of this? And their answer is that our reading would be unlawful under 417E of the Internal Revenue Code and therefore it can't mean what we say it does. And there are several things that I would submit in response to that. I would also, by the way, point out to the court that if we are right that it is ambiguous, then the district court had to defer to the interpretation by the plan committee under this Court's decisions and under the Supreme Court's decisions, which we cited in the papers, and should have actually granted summary judgment for our side in deference to the committee's interpretation and didn't do so. Indeed, the court ignored the extrinsic evidence, refused to consider it, holding that it was clear and unambiguous so there was no reason to look at it. I would address the illegality point because I take one of your adversary's principle arguments to be because of this whipsaw violation, which was ongoing prospectively, if I understand the record correctly, it had been ongoing retroactively. It had been eliminated in 2003, so for people retiring after that date, problem fixed, but not for people retiring before that date, and that we should really construe this provision so as to remedy that problem as well because it was an ongoing illegality for a subset of the past retirees. Why isn't that right? Well, let me give you several reasons, Ron. First, the RAA has nothing to do with 417E. 417E deals with lump sums. The RAA by its very title and by the words of the RAA deals with an annuity benefit. So this is an inapplicable provision of the code, and that's the principal reason. But there are other reasons as well. Before you get there, isn't it really a combined lump sum and annuity that's being paid under that election and therefore you get back into 417E? No, Your Honor, because what 417E says is you have to be guaranteed a lump sum benefit that is at least equal to the annuity version of the same benefit. What we're talking about is a comparison between the annuity of an old plan, not the same benefit as the lump sum, and the lump sum under a new superseding plan. So it isn't even directed at the issue that 417E is intended to cover. 417E clearly does cover a new plan versus a new plan comparison. That was what we resolved by fixing the interest rate issue in 2003. It was also the subject of the prior litigation, Colgate 1 litigation, which was settled years ago. The problem that we were focused on in 2004, which was implemented in 2005, was looking at the comparison between the old annuity and the new lump sum, a completely different question, and the extrinsic evidence makes that absolutely clear, but the Court declined to look at that evidence because she concluded that it was a clear and unambiguous provision and therefore didn't consider the extrinsic evidence. I would say one last thing, if I may, before I sit down. The plaintiff's interpretation of this situation in 417 creates anomalies which exist and do not even cure the legal problem that they're asking you to make dispositive. And let me give you two examples. Suppose that there is a member of the plan whose lump sum payment is equal to or greater than the value of the old annuity. She's not entitled to an RAA payment under paragraph 1. But suppose her lump sum under the new plan is worth less than the annuity version under the new plan. Under the plaintiff's theory, she's entitled to an adjustment, but she's not under the RAA, so we would leave the very same allegedly illegal position, unlawful position, in place, untouched by the plaintiff's interpretation. Similarly, suppose a member is not grandfathered. She was never under the old plan. She's only been under the new plan. But her lump sum benefit is worth less than her annuity form of the same benefit under the new plan. The plaintiffs, under the plaintiff's theory, the RAA wouldn't even address that situation. It would leave the same alleged violation of 417E in place. I understand that. Isn't the argument, and maybe this is a good argument, maybe it's not, but isn't the argument that if we accept their interpretation, you are bringing a class of people, okay, there are some to whom this provision would not apply, but a class of people are receiving the full benefit that they would be entitled to correcting for both problems, the undervaluation of the grandfathered benefit and the whipsaw calculation? But again, Your Honor, that assumes that 417E applies to a situation where what you're trying to do is make sure an old annuity is being fully valued, not making sure that a lump sum is being fully valued. This is kind of a semantic difference that they have weighed in on and persuaded the district court was a proper interpretation. We submit it's wrong as a matter of law, that the provision is ambiguous, that required that the court look to the extrinsic evidence to determine if the plan's interpretation was arbitrary and capricious. Since the extrinsic evidence supports the plan's interpretation, that required under this circuit's decision law and under the Supreme Court decisions that she defer to the interpretation by the plan. So it should have been summary judgment entered in our favor. At a minimum, it should not have been summary judgment entered for the plaintiffs on the face of that record. Thank you, Your Honor. Thank you. Good morning, and may it please the Court. The district court correctly held that the language of the plan governing this dispute is unambiguous. And to show why, I'd like to ask the Court to sort of walk with me through the text of the RAA itself and the plan appendix provisions that the RAA refers to. Because I think when you read them together, you'll see that the district court's conclusion is unassailable. What about the legal principle that if you have to read a provision ten times to understand it, it's inherently ambiguous? Well, I think when a document has a lot of technical jargon in it, as a lay person, you might have to read it a few times. But I think if those readings, at the end of the day, you realize that it can only mean one thing, then I think you do have an unambiguous docking. And I'd like to explain why here. I think if we start with the text of the RAA, it's undisputed that the context against which this was drafted is that about 15 years after Colgate had changed its plan to this cash balance structure, Colgate had realized that lump sums that it had been paying people were deficient. Right. They screwed up. And this was an amendment to provide an additional benefit to those who took lump sums. So with that background, the document becomes clear and means what the district court said in there. If we turn now to the text, the first paragraph defines which members shall receive the additional annuity benefit. And I'll come back to that, but I think the core here of the dispute is over the second paragraph. And let me talk about that now. The second paragraph says how much the additional benefit is for those members. And it's the difference between two amounts. It's a subtraction equation. The first amount is the age 65 single life annuity actuarial equivalent amount of the member's lump sum payment. That's what the parties are calling the AE of LS. And it's common ground that that's just a clause that calls for the determination of the value of that lump sum, the deficient lump sum, expressed as a retirement age annuity so that you can do that apples-to-apples comparison. The second amount, and I'm quoting again, is the age 65 single life annuity benefit otherwise payable, annuity benefit otherwise payable to the member under appendices B, C, or D as applicable. There's a reference to all of the appendices. And that's the crucial language in dispute. And that language, that otherwise payable language, asks a simple question. What annuity would have been payable to the member had he not elected a lump sum? Had he elected an annuity instead of a lump sum? And the answer to that question is found in the plan appendix that applies to that member. So I'd ask the Court to also look at Appendix C, which is the appendix that applies to most of the members here. That's at A480 of the appendix. It's the one that applies to those who made contributions to maintain plan benefits. That is the majority of the folks. And if you focus on Section 2, you'll see that members upon leaving Colgate had a choice. And the choice was between two types of benefit, a lump sum or an annuity. It wasn't a choice between something called a grandfather and something called a PRA. It was a choice between a lump sum and an annuity. And if you then look at Paragraph A, it says, Upon separation from service, he shall be entitled to receive a lump sum payment. And then it has the amount. And then if you look at Paragraph B of 2, it says, If he elects to receive an annuity settlement instead of a single lump sum payment, he shall be eligible for an annuity. And then the very last clause at the very bottom of page 480 says what that annuity is. And it's always the larger of. That's the phrase, the larger of two. And if you turn to page A41, you'll see that there's a little Roman I. That describes the annuity that the parties have been calling the grandfather annuity. And if you look at little Roman II, that's the annuity benefit that we've all been calling the PRA annuity benefit. So the otherwise payable annuity was the larger of those two, as Judge Spofield explained. So if you put the RAA language together with the appendix language, it's really crystal clear that the residual annuity is simply the difference between the annuity equivalent of the lump sum that the member actually received and the annuity that he otherwise would have received had he not checked the lump sum box but chosen that larger of two annuities. It's as simple as that. And I would just say that any competent drafter who wanted to refer only to that little Roman I annuity could have easily said that, and it's impossible to conceive that they wouldn't do that if they didn't want to refer to the whole appendix. And that brings us back to paragraph 1. If you look at paragraph 1 of the RAA, it uses, again, a reference to the whole appendix. It does not say any person or any member who under the grandfather subprime of B, C, or D is entitled to a greater benefit. It says any member who under any of appendices B, C, or D is entitled to a greater benefit than his accrued benefit shall receive, and it says shall receive an additional benefit. And there's a real anomaly in Colgate's position that, you know, has been varied a little bit. Under Colgate's view, a whole host of people come in under paragraph 1. It opens the door to them. It says they shall receive an additional benefit, and then the door is slammed on them in paragraph 2 because Colgate arbitrarily treats the references to appendices B, C, and D in paragraph 2 as a partial reference just to the one prong and not, as Judge Scofield said, to the whole appendix. But you don't disagree that this provision, by your interpretation, would not fix the Whipsaw calculation for a large number of potential plaintiffs? It would not fix the Whipsaw calculation for them. I mean, I understand the Whipsaw calculation had been, as of 2003, before this provision is enacted, prospectively Colgate had adopted going forward a calculation with which you agree. But for those who had retired before, there was a still class of people who had not had, and that's what the first litigation was about. When this is enacted, this would not solve the problem of the Whipsaw calculation for all of that group of people, even accepting your interpretation. We're taking a slice of those people who happened to have grandfathered benefits that were greater than the accrued benefits, who paid into the grandfathered scheme so that the value of their grandfathered plan would be greater than the value of the accrued benefit they would get under the new plan. It takes in those who paid out of their own pocket to preserve that benefit structure. And I would say there's nothing anomalous. It's undisputed that what may have triggered Colgate's desire to do an RAA was this glaring problem that there was no effort to match the 411A7 protected accrued benefit when it was the grandfather benefit to the lump sum that was paid. There wasn't even a pretense of doing that. There's nothing anomalous about saying that a company that sees that it violated a statute, made an underpayment to a discrete group of people, would then take that group in hand and remedy all of the violations and all of the underpayments. I think what is truly anomalous is what my adversary here is suggesting, that they would take a group of people who they know they committed a violation and only fix one of the two violations and do it in such an obscure way without identifying the prong. This is a document that happens to make the plan comply with the law as applied to this group of contributing participants. And I think it's clear that if you don't, you know, we think it is unambiguous, obviously, but under the precedence, if there are two choices that are otherwise reasonable, so even if you say, well, it's got a lot of technical terms, maybe it's ambiguous. The canon of construction does say that you must prefer, and the planning administrator is not at discretion here, the construction that will put the plan in compliance with law. And it's just wrong to say that Colgate's construction would not create a legal violation. It would create a really obvious violation because we've talked a lot about class member Ramaswamy in the briefs. He illustrates it, okay? His grandfather annuity was $2,200 per month. These are Colgate's calculations. These are undisputed. His PRA annuity was $2,400 a month. Colgate's never disputed because it can't that his ERISA 411A7 protected age 65 annuity benefit is that larger $2,400 annuity. Yet on Colgate's view, you ignore that and you underpay him because you only calculate the difference between the actual equivalent of his lump sum, and that's smaller annuity. That is quite clear, and it's also clear that 417E absolutely applies, as Judge Kogan alluded, to a combination lump sum annuity. And that's what this is. If you look at paragraph 1, it couldn't be clearer that this is not, it's a combination lump sum annuity. Pardon me again. I'm just, with the mask, I'm sort of breathing differently. If you... Don't pass out. I won't pass out. If you look at paragraph 1, it says, effective as of July 1, 1989, a member who under any of appendices B, C, or D, there's that phrase again, and who chooses to receive his benefit under this lump sum option shall receive, in addition to such lump sum payment, an additional benefit commencing at the same time. So this was written retroactive as if it had been in the plan since 89. That's the first phrase, effective as of 89. So you have a clause that says this is how it should have always been done. You should have gotten a lump sum plus a residual annuity at the same time in lieu of that age 65 winning annuity. That's your, you know, that's your ERISA protected benefit. So I think, you know, Judge Scofield got it right on both scores here, and I think the decision should be affirmed. Unless there's other questions, I'll... Okay, thank you. Several points, Your Honors. First, with respect to counsel's comments about the appendices, when you look at the appendices, you will see that references to the old annuity appear throughout the appendices. It is perfectly reasonable to say in the amendment to look at those portions of the appendices that are applicable if, in fact, you're talking about fixing a problem of comparing the old annuity to the new lump sum because he only read from the sections that relate to the new annuity. The same appendices refer repeatedly to the old annuity. So it was perfectly reasonable to say look at the portions of the appendices that are applicable to the benefit that's defined in paragraph 1 of the RAA. All right, so that's your construction of the words as applicable at the end of that sentence. But really, in the natural reading, it really says whichever one of those apply, B, C, or D, or A, B, or C, whichever the numbers were, it's not saying go in there and figure out what parts of it apply. It's saying the whole thing applies, and you're only applying one part of Appendix C, right? We're applying parts of several of the appendices, A, B, and C, because there are references. The differences depend upon whether you made contributions under the old plan, did not make contributions. So there are various places that you have to look within the appendices to find out which portions are applicable to the old versus new comparison. Now, it's no question. We could have drafted this more clearly. It also could have been drafted more clearly to accommodate the plaintiff's reading. It could have said exactly what Judge Schofield ultimately held it said. It could have said if the lump sum turns out to be worth less than either the old annuity or the new annuity, you shall get a residual payment. It doesn't say that. The fact that we're debating this demonstrates... But let me ask you this. Would your result be any different if the words as applicable were not there in Appendix A, B, or C? No, as applicable. Then where would you be? I think I'd be in the same place, Your Honor. Then what meaning does the word as applicable have? Because I think it helps to clarify that you should find those particular sections of the appendix that actually apply to your situation. And remember, you have to read the two paragraphs of the RAA together. The RAA is telling you how to compute a benefit that's defined in the first paragraph. And the first paragraph clearly says if you were entitled to a benefit under the old plan, which it turns out is greater than the lump sum you've chosen, then you shall get a new benefit. And then it simply says such benefits shall be calculated or computed as follows. Their argument essentially disconnects the two paragraphs. We want to talk about principles of contract construction. You must read a contract as a whole and you must read the provisions in pari materia with one another. I believe it is absolutely clear that at least paragraph 1 is referring to a comparison of a benefit that was available as of July 1, 1989 to those who were grandfathered under the plan. And it says it turns out that if the lump sum that you've elected under the new plan is worth less than the old benefit, then you get a benefit. The ambiguity that they're talking about in paragraph 2  Which benefits shall be computed? The one that's just been described in paragraph 1 of the RAA. Their reading suggests to do a comparison between two variables which are not referred to in paragraph 1 of the RAA. They're saying compare A and B in paragraph 1. And then they're saying when you get to paragraph 2, compare A and B and A and C. Where in paragraph 1 is there a reference to C? It's not there. And that's because if you look at the chronology, the company thought they solved that issue in 2003 when they used the same interest rates for both calculations. Then they found the problem of old versus new. They hired consultants who came in and told them, you have a problem with old versus new. That's the extrinsic evidence which is in the record which the district court declined to consider. Then they turned to fixing that problem. Now, the fact that they didn't also see that there was a retrospective problem potentially with respect to the new versus new and fix that at the same time doesn't render the provision unlawful because the provision was never intended to address that. That's what the extrinsic evidence that was not looked at by the district court demonstrates. I would also just, in conclusion, one other point. All of the cases that the plaintiff has cited, the Great Northern Railway case, the Walsh case, the Frommer case, they all deal with situations where an amendment to the plan creates a new legal issue. There was no new legal issue even under the plaintiff's recitation here. They're claiming we failed to address a preexisting legal issue. There's not a single case that they've cited that says that under those circumstances this principle of contract construction must be applied to cure a problem that preexisted that people didn't focus on at the time. Those cases are not dealing with that situation. They're dealing with a creation of a wholly new legal issue by virtue of an amendment to the plan. And every one of those cases says under those circumstances you can't interpret the plan to create that new legal problem. That's not our situation. Those cases are inapplicable. Thank you, Your Honor. Thank you both. Very nicely argued and very helpful. We'll take the case under submission... We will take the case under advisement and the next case on the calendar is the United States rejoiner. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Theodore Koch. I represent the appellant Duane Joiner. In September of 2017, Mr. Joiner was indicted for several narcotics crimes. He filed a motion to suppress some of the evidence he lost, proceeded to trial, was convicted on all charges but one, and was then sentenced. And he was sentenced on the drug charges...